IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIA CARDENAS,

    Plaintiff,

  v.         No. 05 C 6462

ARAMARK FACILITY SERVICES, INC.,
LOCAL 1, SERVICE EMPLOYEES
INTERNATIONAL UNION,
JOHN VON KERENS, DAN LONNGREN,
AMANDA KOWYNIA, DAVIE WIGSMOEN,
and CHARLES JONES,

    Defendants.

## MEMORANDUM OPINION AND ORDER

  Plaintiff Maria Cardenas is a Hispanic female born in Mexico. Plaintiff was discharged from her position with defendant Aramark Facility Services, Inc., which had employed her as a housekeeper at McCormick Place, a convention facility in Chicago. Plaintiff was discharged for accepting food from an exhibitor at a convention, which is against her employer's work rules. While employed, plaintiff was a member of defendant Local 1 Service Employees' International Union ("SEIU"). Also named as defendants are Aramark managers John Von Kerens, Dan Lonngren, and Amanda Kowynia; SEIU union steward Dave Wigsmoen;

and SEIU union representative Charles Jones. In three motions raising overlapping issues, all defendants have moved for summary judgment.[1]

Plaintiff's Second Amended Complaint contains four counts. Count I is a claim against Aramark and SEIU for discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Count II is a race discrimination claim against all defendants based on 42 U.S.C. § 1981.[2] Counts III and IV are "hybrid" breach of contract/breach of the duty of fair representation claims against Aramark and SEIU.[3] See generally Neal v. Newspaper Holdings,

---

[1] After the summary judgment motions became fully briefed, the attorneys for plaintiff moved to withdraw as counsel, asserting that plaintiff has failed to pay expenses or the agreed upon fees. (The attorneys also conclusorily assert irreconcilable differences have arisen, but they apparently are referring to differences regarding fees.) Because the summary judgment motions of defendants are being granted, the motion to withdraw will be denied without prejudice as moot. It is noted, though, that, absent the client agreeing to discharge the attorney, this bench generally does not permit attorneys to withdraw solely based on a client's failure to pay fees.

[2] Discrimination against Hispanics is cognizable "race" discrimination under § 1981. See Cardenas v. Aramark Facility Services, Inc., 2006 WL 1344057 *2 (N.D. Ill. May 11, 2006).

[3] In her complaint, plaintiff denominates Count III as a breach of the duty of fair representation claim against SEIU and Count IV as a breach of contract claim against both Aramark and SEIU. While it is possible to have a breach of the duty of fair representation claim against a union that does not also involve the element of breach of contract by the employer,

Inc., 349 F.3d 363, 368-69 (7th Cir. 2003).

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Scott v. Harris, 127 S. Ct. 1769, 1774, 1776 (2007); Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Creditor's Committee of Jumer's Castle Lodge, Inc. v. Jumer, 472 F.3d 943, 946 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Jumer, 472 F.3d at 946; Cady v. Sheahan, 467 F.3d 1057, 1061 (7th Cir. 2006), cert. denied, 127 S. Ct. 2947 (2007). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex,

---

see Breininger v. Sheet Metal Workers International Association Local Union No. 6, 493 U.S. 67, 80-83 (1989), that is not the type of claim plaintiff alleges against SEIU. The alleged breach by SEIU was the failure to further pursue a grievance against Aramark regarding plaintiff's discharge. Such a claim cannot succeed unless plaintiff also shows that Aramark breached the collective bargaining agreement. See id. at 80; Neal, 349 F.3d at 368.

477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Yasak v. Retirement Board of Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988); Shyman v. UNUM Life Insurance Co. of America, 2004 WL 609280 *2 (N.D. Ill. March 25, 2004), aff'd, 427 F.3d 452 (7th Cir. 2005). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do

> more, however, than demonstrate some factual
> disagreement between the parties; the issue
> must be 'material.'" Logan, 96 F.3d at 978.
> "Irrelevant or unnecessary facts do not preclude
> summary judgment even when they are in dispute."
> Id. (citation omitted). In determining whether
> the nonmovant has identified a "material" issue
> of fact for trial, we are guided by the
> applicable substantive law; "[o]nly disputes that
> could affect the outcome of the suit under
> governing law will properly preclude the entry of
> summary judgment." McGinn v. Burlington Northern
> R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)
> (citation omitted). Furthermore, a factual
> dispute is "genuine" for summary judgment
> purposes only when there is "sufficient evidence
> favoring the nonmoving party for a jury to return
> a verdict for that party." Anderson v. Liberty
> Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505,
> 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical
> doubt" regarding the existence of a genuine fact
> issue is not enough to stave off summary
> judgment, and "the nonmovant fails to demonstrate
> a genuine issue for trial 'where the record taken
> as a whole could not lead a rational trier of
> fact to find for the non-moving party . . . .'"
> Logan, 96 F.3d at 978 (quoting Matsushita Elec.
> Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
> 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
> (1986)).

Outlaw, 259 F.3d at 837.

Essential to all of plaintiff's claims is proof that plaintiff was discriminated against because she is Hispanic. The Title VII and § 1981 claims against SEIU and its agents require proof that plaintiff was provided inadequate representation because she was Hispanic. The Title VII and § 1981 claims against Aramark and its managers require proof that plaintiff was

discharged--more accurately, denied reinstatement--because she is Hispanic. The hybrid claims against SEIU and Aramark require proof of both types of discrimination. Since plaintiff does not present sufficient evidence to support a genuine issue of material fact that she suffered discrimination, summary judgment will be granted dismissing all of plaintiff's claims.

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of summary judgment are as follows. Prior to her termination, plaintiff had been employed as a housekeeper at McCormick Place for approximately 26 years. Her regular assignment, including on the pertinent date, was to clean meeting rooms and offices, not the areas where a trade show takes place. There is a long-standing, established rule for McCormick Place employees that they are not to remove any items from a trade show for personal use. This includes items specifically offered to an employee by an exhibitor, which the employee is to refuse. Plaintiff was aware of this rule. Taking or accepting such items is a "Major Rule Violation" for which an employee is subject to immediate termination without any prior warning.

In October 2004, the National Automatic Merchandising Association held a show at McCormick Place. Regarding this show, an email was distributed and a posting was placed on an employee

bulletin board reminding employees that only employees with official business were permitted on the show floors and employees were not to take any samples or leftovers or accept any that were offered.

On October 15, 2004, security employees stopped plaintiff and Aramark employee Juanita Williams because they were in possession of food items from the show. Williams was a part-time housekeeping employee who was assigned to the show floor that day. Plaintiff was not assigned to the floor that day and had already clocked out. Williams is a non-Hispanic, African-American woman. As of 2004, Williams had worked at McCormick Place for approximately three years. As a part-time employee, Williams worked sporadically when needed for larger shows. The items in the employees' possession had been given to them by an exhibitor who would otherwise have thrown the items out. Plaintiff had a donut, a can of peaches, and a soda pop.

Security brought the two employees to defendant Housekeeping Manager Lonngren. On his way to meet the employees, before he even knew who they were, Lonngren ran into defendant General Manager Von Kerens who told Lonngren the employees should be suspended pending an investigation. That is what Lonngren did following a short meeting with the two employees during which plaintiff explained that the items were otherwise being thrown

out. Plaintiff urged Lonngren to just give her a report and not suspend her. Plaintiff demanded a written suspension report. Williams said nothing and simply left when told she was suspended.

At her "first step" meeting held the following week, plaintiff was represented by defendant Wigsmoen. Defendants Von Kerens, Lonngren, and Human Resource Manager Kowynia were present, as well as a bilingual employee who acted as a translator. Plaintiff did not deny that she intended to keep the items that were given to her by the exhibitor. She was not remorseful and did not apologize. Plaintiff did not explain why she was on the trade show floor well after her worktime had ended.[4]

At her separate "first step" meeting, Williams, who was also represented by Wigsmoen, stated that plaintiff had told her things were being given away and that it was okay to take them.

---

[4] Plaintiff testified she was not actually in the show area so it must be assumed to be true that she was not actually in the show area. It still can be taken as true that plaintiff was on a show floor outside the actual show area. (At her deposition, Williams testified that both of them were in the show area. It may be inferred that Williams also admitted that during her meetings regarding discipline.) It is undisputed that security informed Lonngren and Von Kerens that plaintiff was in the show area. To the extent material, it is undisputed that, at the time decisions were made to discharge plaintiff, Lonngren and Von Kerens believed plaintiff was in the show area.

Plaintiff did not direct Williams as to which specific items to take, but it is undisputed that plaintiff told Williams it was okay to take items. At the meeting, Williams stated that she now recognized it was improper to have taken the items and she was very apologetic and remorseful.

Because both plaintiff and Williams had taken or accepted items in clear violation of existing rules, Von Kerens decided to discharge both of them and Lonngren prepared the appropriate discharge papers.

SEIU thereafter filed grievances on behalf of each employee who each had a separate "second step" grievance meeting. The same people were present as at the pre-discharge meetings except that this time the employees were represented by defendant Jones. At her grievance meeting, plaintiff again admitted being in possession of the items and again provided no explanation as to why she was at or near the show area. At her grievance meeting, Williams again stated that plaintiff had said it was okay to take items and she again was apologetic and also promised never to do it again.

Following the meetings, Von Kerens upheld plaintiff's discharge, determining that she had deliberately violated the

rule against accepting any items from exhibitors. At his deposition, Von Kerens explained:

> The way I saw from the investigation and from the follow-up testimony at the grievance, I had a full-time employee that had clocked out, purposely went back onto a show floor that she had no authorization to be on, attempted to take items from the show floor which is strictly against the rules. A notice from the McCormick Place General Manager had been posted for that specific show that no items can be taken, to remind everyone of the long-standing rule. And that a full-time employee had gone up to a part-time employee and told her that it was okay. The part-time employee was assigned to the show floor. She was at her work site. She was still on the clock. So those are the factors I took into making the decision.

Von Kerens Dep. at 27.

As to Williams, Von Kerens decided to reinstate her with a suspension of more than a month and a final warning. His stated reason for reinstating her was that she was a part-time employee in her assigned area who appeared to have been misled by a more experienced employee of higher status into believing that it was okay to take the items despite written rules to the contrary. Also, Williams appeared to be truly remorseful and promised never to violate the rules. Von Kerens, however, testified that he likely would have reinstated Williams even if she was not remorseful and likely would not have reinstated plaintiff even if she had been remorseful.

- 10 -

Thereafter, SEIU declined taking plaintiff's grievance to the next step of arbitration.

Whether plaintiff can show that she was discharged because she is Hispanic will be considered first. The same standards of proof apply to both Title VII and § 1981. Patton v. Indianapolis Public School Board, 276 F.3d 334, 338 (7th Cir. 2002). Plaintiff concedes that she has no direct evidence of discrimination so that she must instead rely on the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Under the McDonnell Douglas framework, a prima facie case of employment discrimination creates a rebuttable presumption that the employer's actions, if unexplained, were the result of impermissible factors and shifts the burden of production to the employer to articulate some legitimate, nondiscriminatory reason for its actions. If the employer satisfies that burden, the plaintiff must then show that these articulated reasons are pretextual. Davis v. Con-Way Transportation Central Express, Inc., 368 F.3d 776, 784 (7th Cir. 2004). The plaintiff can do this by showing race was a motivating factor in the employer's decision or by presenting a material factual dispute as to the sincerity of the proffered reasons. Freeman v. Madison Metropolitan School District, 231 F.3d 374, 379 (7th Cir. 2000);

Collier v. Budd Co., 66 F.3d 886, 892 (7th Cir. 1995) (quoting Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir.1992)). As to the latter, it must be shown (a) that the proffered reason had no basis in fact, (b) that the proffered reason did not actually motivate the decision, or (c) that the reason was an insufficient reason to motivate the decision. Holmes v. Potter, 384 F.3d 356, 361 (7th Cir. 2004); Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Davis, 368 F.3d at 384 (quoting Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000)).

A common formulation of the prima facie case is: "1) [plaintiff] was a member of a protected class, 2) she was meeting her employer's legitimate business expectations, 3) she suffered an adverse employment action, and 4) her employer treated similarly situated employees outside of the class more favorably." Kampmier v. Emeritus Corp., 472 F.3d 930, 939 (7th Cir. 2007). Accord Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006). As to the discriminatory discharge, the Aramark defendants contend the fourth element is not satisfied and SEIU contends that both the second and fourth

elements are not satisfied.[5]

SEIU contends that plaintiff was not satisfying Aramark's legitimate expectations because it is undisputed she violated the rule against accepting items from a trade show. That, however, is an inappropriate consideration when it is alleged that Aramark discriminated by not discharging non-Hispanics who violated the same rule. See Curry v. Menard, Inc., 270 F.3d 473, 477-78 (7th Cir. 2001) (meeting employer's legitimate expectations need not be shown when the plaintiff alleges she was disciplined more harshly than others who committed similar misconduct); Flores v. Preferred Technical Group, 182 F.3d 512, 515 (7th Cir. 1999) (same); Echols v. Select Beverages, Inc., 64 F. Supp. 2d 807, 812 & n.5 (S.D. Ind. 1998). There is no contention that plaintiff was otherwise not performing her housekeeping duties up to plaintiff's legitimate expectations.

As to the fourth element, the issue raised by the parties

---

[5]Plaintiff does not dispute using a prima facie standard requiring that she must show at least one other similarly situated employee was treated more favorably. A recent Seventh Circuit case suggests that, generally, the better formulation of the prima facie case in the context of a discriminatory discharge is to instead use a fourth element that the employer sought a replacement after the plaintiff's discharge. See Pantoja v. American NTN Bearing Manufacturing Corp., ___ F.3d ___, 2007 WL 2230095 *3-4 (7th Cir. Aug. 6, 2007). Plaintiff, however, has not offered any evidence to that effect. In any event, as discussed below, this claim fails at the pretext stage even if plaintiff can satisfy the prima facie case.

is how similarly situated the comparable employee must be. The only comparable employee that plaintiff points to is Williams. Williams is non-Hispanic; Williams committed the same violation as plaintiff; both were housekeeping employee; both had the same supervisor: and the same person (Von Kerens) decided the disciplinary action to impose on Williams and plaintiff. Defendants contend Williams is not similarly situated because Williams is part-time and less experienced than plaintiff; Williams was authorized to be in the trade show area; Williams was remorseful and apologetic; and plaintiff was the one who suggested to Williams that it was okay to accept items.

The Seventh Circuit has cautioned against requiring too close a match between the plaintiff and comparable employees. See Crawford v. Indiana Harbor Belt R. Co., 461 F.3d 844, 846 (7th Cir. 2006). The comparable employees need only be similar, not identical, Goodwin v. Board of Trustees of University of Ill., 442 F.3d 611, 619 (7th Cir. 2006), with the overriding concern being that "the members of the comparison group are sufficiently comparable to [the plaintiff] to suggest that [plaintiff] was singled out for worse treatment." Crawford, 461 F.3d at 846. Accord Pantoja, 2007 WL 2230095 at *4 (dictum). Required similarities must be limited to material characteristics, which will vary in accordance with the case.

See Crawford, 461 F.3d at 846-47; Raymond, 442 F.3d at 610-11. For example, total length of service will be material if considering total number of prior reprimands of discharged and retained employees, but immaterial if considering the number of reprimands during a specified one-year period. See Crawford, 461 F.3d at 846. Here, for example, being remorseful would be immaterial since Von Kerens testified his decision was not affected by whether or not either employee was remorseful.

In this case, the characteristics that defendants contend make Williams not similarly situated to plaintiff are simply Aramark's stated reasons for reinstating Williams and not reinstating plaintiff. In that situation, it is more appropriate to go directly to the question of whether plaintiff can show that Aramark's stated reasons for not reinstating plaintiff are pretextual. Cf. Gordon v. United Airlines, Inc., 246 F.3d 878, 886 & n.9 (7th Cir. 2001); Sanghvi v. St. Catherine's Hospital, Inc., 258 F.3d 570, 577 (7th Cir. 2001), cert. denied, 534 U.S. 1114 (2002); Roberts v. Separators, Inc., 172 F.3d 448, 451 (7th Cir. 1999); Clouse v. Walgreen Co., 2005 WL 1638175 *4 & n.1 (S.D. Ind. June 30, 2005).

Plaintiff has no sufficient evidence supporting that Von Kerens's principal grounds for the discharge were pretextual. As compared to Williams, plaintiff was discharged because she was

more experienced, was determined to have suggested to Williams that they both accept the items, and was not authorized to be in the area. Plaintiff does not point to evidence supporting that Von Kerens was dishonest in stating these reasons nor does plaintiff show that the underlying facts were not true or not believed to be true by Von Kerens. There is no dispute that plaintiff was substantially more experienced than Williams and it was within Von Kerens's discretion to expect more rigid conformance to rules from experienced employees. The only evidence that plaintiff points to in order to dispute that she egged on Williams's participation is Williams's deposition testimony that Williams made her own decision as to what specific items to take. That is not inconsistent with Williams's statements, which she made to Von Kerens at her first step meeting, that plaintiff had told her it was okay to take items. There is no basis for inferring that it was inappropriate for Von Kerens to also take into account that plaintiff committed the additional violation of being in an unauthorized area that day.

Since plaintiff has failed to show that Aramark's stated reasons for discharging her are pretextual, any claim that requires proof that she was discriminatorily discharged must be dismissed. That includes the Title VII and § 1981 claims against the Aramark defendants. It also includes the hybrid claims

against SEIU and Aramark. To succeed on the hybrid claims against either or both defendants, plaintiff must show both a breach of SEIU's duty and a violation of the collective bargaining agreement ("CBA"). Neal, 349 at 368. Plaintiff does not contend that Aramark violated the CBA because she did not actually violate a rule against accepting items or because accepting such items is not a grounds for discharge under the CBA. She instead contends the CBA was violated in that an anti-discrimination provision of the CBA[6] was violated in that plaintiff was discriminated against because she is Hispanic. As previously discussed, plaintiff has not shown that such discrimination occurred.

Still to be considered are the Title VII and § 1981 claims against the SEIU defendants. Those claims require proof that these defendants declined to more fully or aggressively represent plaintiff because she was Hispanic, particularly that they did not pursue arbitration on her behalf. Plaintiff does not have any direct evidence of such discrimination. She contends that such an intent can be inferred by the fact that defendants pursued Williams's claim to a higher level than plaintiff's claim. That assertion, however, is not true. For

---

[6]Plaintiff does not point to any evidence that the CBA actually has such a provision.

both Williams and plaintiff, SEIU pursued second step grievances. Since Williams was successful at that stage, there was no need to pursue her claim in arbitration. Plaintiff points to no sufficient evidence to support that SEIU did not pursue her claim further or more aggressively because she was Hispanic.

Plaintiff also complains that she was not allowed to use the translator she preferred. It is uncontested that a translator was at both of plaintiff's meetings and plaintiff points to no evidence that the translator provided was unable to adequately translate. No inference of discrimination can be drawn from the failure to use plaintiff's suggested translator.

Since plaintiff cannot show any deficiencies in representation that were motivated by discrimination, her Title VII and § 1981 claims against the SEIU defendants fail. This is also another basis for dismissing the hybrid claims against SEIU and Aramark since the breach of duty of fair representation is based on alleged discrimination on the part of SEIU.

Since the previously discussed grounds are a basis for dismissing all of plaintiff's claims, it is unnecessary to consider any other issues raised by defendants. Summary judgment will be granted dismissing all of plaintiff's claims.

IT IS THEREFORE ORDERED that the motion of plaintiff's counsel to withdraw from their representation of plaintiff [65] is denied without prejudice as moot. Defendants' motions for summary judgment [41, 45, 47] are granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

*[signature: William T. Hart]*
UNITED STATES DISTRICT JUDGE

DATED: SEPTEMBER 12, 2007